Good morning, Your Honors. I may have pleased the Court. The issue posed by this case is whether, in all circumstances, in all traffic stops, as to all vehicle occupants, danger ought to be presumed such that a passenger wishing to leave the scene may not do so on the officer's direction. Counsel, how can we? I guess the problem I have with this case is the Supreme Court has already told us quite clearly that if the officer decides in his or her discretion that they want to keep the passengers in the car, that for reasons of officer's safety, or excuse me, get them out of the car, for reasons of officer's safety, they should be allowed to do that because the intrusion is de minimis. Correct. Why isn't the converse just the same? I mean, why should we be trying to announce, you know, the rule that you're asking us to announce, when there's no way we can possibly take into account all of the various factors that might influence officer's safety in circumstances we can't begin to imagine? Two answers to that, Your Honor. First is that Wilson is distinguished precisely because there really isn't an overarching liberty interest at issue in Wilson. The issue in Wilson is whether the officer could order the passenger out of the car, and one could presume that without more, the passenger under those circumstances would just be free to leave the scene. In this case, by contrast, you're asking you would be permitting police officers to, in all circumstances, order the passenger to remain in the car, which is a direct infringement upon the principles enunciated in Terry v. LaFleur. But given the fact that the passenger presumably put himself into the car before the police stopped him, why is that intrusion anything other than what the Supreme Court has described it in other contexts in ordering him out of the car when it's de minimis? Well, the de minimis action that I believe is at stake in Wilson was the fact that there was merely a geographical change. That's one of the things I believe that Chief Justice Rehnquist stressed. The passenger would either be in the car or he'll be out of the car. He'll be in the car if he chooses to stay there. If he's out of the car, he would still ordinarily have the right to go, and that's what I think is lost in the argument that an officer should, in all circumstances, be able to order the passenger back into the car. What if we had a situation where there were six people in the car and the officer stops the driver for some vehicle violation, and it's really only the driver that the officer is initially concerned about, and the other five people get out of the car and start wandering around behind the officer, walking off in a direction where he's now being surrounded by five people? Why shouldn't he have the right under those circumstances to say, everybody just stay in the car until I'm finished dealing with the driver here? I see the Court's point, and I'm not suggesting that the officer is without any recourse whatsoever. In that particular situation, I think that's akin to the situations where officers frequently find themselves, let's say, at the scene of a fight, and there's 15 or 20 people around. It's absolutely appropriate for officers to do what they typically do in that situation, clear the area, get out of my way, I need to take care of some law enforcement business. And that would be precisely the thing that I think the officer could appropriately do in a situation the Court is posing, which is the people of the five people get out of the car, if the officer feels that either his safety is threatened or that these persons would be interfering with the lawful exercise of the traffic stop. He could just merely say, you guys get out of here, I need to take care of the driver, I need to do the investigation. And there you do have a de minimis type of order because there is no significant intrusion on an otherwise really rigidly established freedom to move. And that's still struggling, though, with the question I posed to you earlier. And that is, what is it that makes this more than de minimis if we tell the officer essentially if you have a legitimate reason to stop the car in the first place, you have for however reasonable amount of time it takes to complete your business on the car stop, and the authority to control the situation based on whatever circumstances you are facing until you are done, in which case when you've issued the citation or given the driver the warning or whatever, arrested the driver, whatever you're going to do, at that point, then people are free to do whatever they want. They can either get out of the car and wander off or drive off or whatever they're going to do. Isn't that a more reasonable rule that we ought to articulate? I don't believe it is. Certainly the Supreme Court left this question open. I'm not saying that the Court ought to intuit from that that they would necessarily rule against it. But when you – it's always a balancing situation. And the freedom of movement is so firmly entrenched, and Terry in his cognate cases, which are supposed to be nearly limited since there is a reduction in the quantum of probable cause necessary when you have an investigative detention, the idea that somebody's liberty to walk away can be restrained on these facts, I think, pushes it on the side of the passenger. In other words, the liberty interest here is seriously being infringed. And if the Court goes down this road, then the officer can take the obvious logical concomitant steps, get in the car. You could, you know, on these facts and on that kind of bright-line rationale, the officer would probably be justified in telling the passenger, get in the police car until I get done. The passenger has done nothing. The passenger is a passenger in a vehicle, and certainly he is detained, as Wilson suggests. But there's a difference between ordering him back in the car from which he just came, and presumably he was there voluntarily, and ordering him to get into the police car. All he's done when he's stopped them is prevented them from moving on in a place where they presumably had already placed themselves, that is, confined within a car. If he needs to talk to the driver, why doesn't he just say, everybody hold the position, I'll be done here in a minute, we'll be done a whole lot faster. But if I've got to be watching people who are coming around behind my back and potentially have reason to want to interfere with my stop of the driver, why is that unreasonable for the officer to say, hold your position? Because I think there has to be some facts which is deducted to the opposite, that that's reasonably necessary. I mean, the whole point here is if a bright-line rule is going to be drawn, we remove the court, we remove the arbiter of the reasonableness of the officer's actions from the equation, and that's a step I did not think the Supreme Court was willing to take, and that's a step that I'm suggesting to this Court that you should not take in this particular instance. Under the appropriate facts, it might be absolutely necessary and absolutely appropriate for the Court to do that, but the case-by-case analysis, which has always been a touchstone of reasonableness under the Fourth Amendment, there's nothing that I'm aware of to show that that's unworkable, and I think that is the reasonable solution. There may indeed be cases where it would be reasonable for the officer to order someone back in the car. But in all instances, giving them carte blanche to do that, I think, takes it too far and really undermines a pre-subsidiary. Okay. You don't want a bright-line rule, so what is the rule that you would like, and how do you apply it in this case? The rule that I would like, I believe, Your Honor, is the rule that is extant in the cases already, that the Fourth, you know, that any seizures have to be either based upon reasonable suspicion of criminal activity. Pardon me, there was no seizure here. There was no search here. Your man was found, I believe, guilty to have thrown a gun out of the car. Correct. Now, where is the seizure? Where is the search? The seizure occurred, Your Honor, at the time that the officer ordered him back in the car. He told him, you can't leave, get back in the car and remain there. And your man was afraid he was going to be searched, so to prevent the fruit of perhaps an illegal search, he anticipated by throwing the gun out of the car. He did. Now, where is the search? Your man voluntarily got rid of the car, a gun, by throwing it out of the car. Okay. We're not dealing with the search issue per se here, I think, Judge Bea. The question is whether he was seized. And it's our position that at the time that he submitted to the officer's command, which was to get back in the car under Hodari D. and all the cases deciding that issue, that was a seizure because he was not free to leave at that point. The abandonment issue, which I don't believe is probably before the Court, but if the Court is engaging me on that issue at this point, I think any tossing of the gun out of the car was in direct response to the fact that Mr. Williams was seized and for no other reason. The time limit, it seems, at least appears on the police report, although the fact were not really developed in the court below, was he threw the gun out almost immediately after he was told to remain in the car and not to move. So we have, if there is a primary taint of illegality by the stop, I believe that the – there was not an abandonment here. Your Honor, I would like to resist the time. Even if there's a voluntary element to the search, a voluntary element by your defendant? No, I believe it was involuntary. He only threw the gun away because he felt that something was going to ensue as a result of him being seized, and the question is, he was illegally stopped. We believe that he was illegally seized. And as long as there's continuity and a nexus between the stop itself and the tossing of the weapon, then we believe that there's no abandonment on the case. You're drawing a distinction, then, I guess, between the – are you saying he was not seized when the car itself was stopped, but the seizure occurred – Correct. Okay. And I know I'm hitting on a common theme here, but I'm really having a hard time seeing the difference when he's initially stopped as a passenger in the car. That seems to me to be a seizure of very – it may be de minimis, and in balancing the law enforcement safety interests against the de minimis intrusion on liberty interests, I'm really having a hard time seeing the distinction you're trying to draw as to why it's fundamentally more severe to order him to remain in the car than it is to stop him in the first place. Okay. May I respond to that question? Yes, absolutely. And I'll give you some rebuttal. Thank you very much. The fact that a passenger is in a car as a passenger and then that vehicle is stopped, I do not believe works as seizure, per se, upon the passenger. The driver is legitimately believed to have committed a traffic violation, probably in the officer's presence. A vehicle stop ensues. Now, the passenger has been stopped by virtue of the fact that the passenger has to stop, but the officer has not really directed any specific action towards the passenger as a passenger. It's kind of a consequence of the fact that the driver has committed an infraction and the passenger, at least for a limited time period, will be subject to the actions taken by the officer against the driver. Once the stop is completed, it's not a seizure because the ultimately we believe that the passenger would have the right, since he's not suspected of criminal activity and at least under existing precedent, we suggest, does not pose a danger to the officer. He can do like any other person would, walking down the street and just take off. That's precisely what Terry establishes, and for that reason, since there's no separate submission to a direction of the officer, merely because the vehicle is stopped, we do not believe that there is a seizure in every instance. Roberts. I think we understand. Thank you very much. Thank you. And I will give you some time for rebuttal. All right. We'll hear, I guess, from Ms. Frick. Good morning, Your Honors. May it please the Court, Erica Frick, appearing on behalf of the United States. In this case, the government would ask that this Court adopt a limited right-line rule along the lines of what Judge Tallman was suggesting. In other words, that the officer can take reasonable steps to control a situation during a lawful traffic stop, and that those reasonable steps include ordering the passenger to remain in the car, at least until the situation is under control. The standard that the defendant is proposing here, that reasonable suspicion be required for that sort of limited restriction on the passenger's liberty, is not a workable standard, because it does not ensure the officer's safety. It requires a level of suspicion that may not always be present, even though there is a danger to the officer's safety. And the hypothetical of the six passengers in the car, I think, illustrates that. If those passengers are free to leave, there is no way to ensure what those passengers are going to do once they get out of the car. Even if they express an intent to leave the scene, they may put the officer's life in danger. And to subject the officer to those sort of chaotic conditions is not required by the Supreme Court's jurisprudence or this Court's. If the Court has no questions. No questions. Thank you. Thank you, Ms. Frick. Well, Mr. Matthews, you've got a little time. Mr. Williams, maybe you could help us deal with Judge Tallman's hypothetical, because you seem to – I thought I understood you to say that if you had six passengers in the car and five of them sort of bolt out of all the doors, they have all the doors opening except for the driver's side, and the officer can order them back into the car, under those circumstances. Now, what's the difference between that hypothetical and the one in which Mr. Williams finds himself, where he's the sole passenger in the car? Well, Your Honor, I didn't concede that if all passengers left the car – So if we had five passengers who all of a sudden bolt out of three doors, the officer has no way to stop them unless he has reasonable suspicion as to each – as to each one of those passengers? Well, the question would be, is there reasonable suspicion or safety? Now, if you – I'm going to kind of hold you to your terms here. If you say bolt out of the door, that may be slightly distinguishable from what happened in this case. You know, if they bolt out of the door, let's say make a menacing move towards the officer, then I think any reasonable officer would say – How about bolting – how about bolting out of the door and running in the opposite direction? Well, in that case, then you have the separate question of whether flight gives – Oh, okay. Well, let's say they move it along at a reasonable pace, but – Saunter. Well, a – a saunter at a reasonable pace by a reasonable officer, I still think it would be unreasonable for the officer to inhibit their progress, for want of a better word, and order them back into the car, precisely because there's nothing, I think, under those circumstances that give rise to the need to siege or control the occupants in that fashion. Again, I'm not suggesting the officer is without recourse, but remember, we're dealing here with potentially a bright-line rule, the genesis of which, at least to some degree, was the Supreme Court's perception that too much happens to an officer when you've got a number of passengers in a car, some of whom may have access to a weapon. So they used that as the locus of the danger. In this particular case, we have passengers exiting the car, removing themselves, basically doing what the Supreme Court says the officer can order them to do. That was the bright line that they drew. Get them out of the car, because it's safer for you that way. So we have a somewhat anomalous situation here in which they're – they're doing the types of things the Supreme Court found to pose less danger than the facts upon which they drew the bright-line rule. I'm not sure they go quite – I don't know that they necessarily found it less dangerous. I think what they were really saying is that we have to leave it to the officer to decide whether, in a particular circumstance, it's in the interest of safety to ask them to get out of the car. And certainly that was the situation our court confronted in Ruvalcaba, where we dealt with, you know, suspected gang members, you know. I mean, the problem that I always have with these cases is you're asking us to announce a rule that's going to be applied on the streets of Oakland as well as in the rural prairies of Montana, where the backup may be 45 minutes away and you may have a lone Montana highway patrolman stopping a car full of who knows who. And these cases are really hard if we as judges try to sit up here and try to announce these principles that are going to apply in field situations that we can't begin to imagine. That's true, Your Honor, but that's precisely the situation facing every court since Terry. How far do we go? You know, at what point do we draw the line and say, all right, enough, we've got to give the officers complete discretion? But is it – I mean, the Supreme Court tells us time and again reasonableness is the touchstone of Fourth Amendment jurisprudence. Right. But when weighed against the fundamental right to be free from unwarranted government intrusion, that is, free to walk away from an involuntary police encounter, I do not think Terry has been abridged to the extent where this Court ought to presume that you're just taking, you know, the next logical step, which you're implying a reasonable standard if you chose to draw a bright line in this case, because I suggest to you that it is not. This is too established, too well settled, and too cherished a right to be abandoned on this type of a showing. I think that there are other reasonable methods, and I don't believe that the case-by-case method of adjudication is unworkable. Okay. Thank you very much, Mr. Matthews. Very good argument, and you've given us a lot to think about. The case just argued is submitted. The next case on the calendar, United States v. Clark, has been previously ordered to be submitted on the briefs. We will now hear argument in United States v. Leonel Ernesto Villasenor. Good morning. May it please the Court, my name is Francisco Leon, and I represent United States.
judges: Tallman, Bybee, Bea